McFarland, J.,
delivered the opinion of the court:
The prisoners were indicted for breaking into the smokehouse of the prosecutor, Bradshaw, with intent to steal bacon, and also then and there stealing a small quantity of *607 bacon. They were convicted of petit larceny, and appeal to this conrt for a new trial.
It appears from the testimony of the proseentor that he was informed that the defendants were coming to his house on the night in question to steal his meat, and that he and others concealed themselves near by to watch; that the smoke-house door was opened, and the house entered, when immediately the parties on watch closed in and arrested one of the prisoners in the smoke-house. The other ran, but was identified and afterwards arrested. These facts are proven by all the parties present. The defense was rested on two grounds:
1. That the breaking and entering and the stealing of the bacon, as well as whatever else really took place, was all done by the consent of the prosecutor, in pursuance of a plot or plan arranged between the prosecutor and a colored man by the name of Rufus Ellison, by means of which the defendants were entrapped.
The charge of the judge on this question, we think, is free from error, and as full as the facts demanded. 3STo further instructions were requested. He told the jury, in substance, that if the breaking of the house, or the removal of the bacon, was the act of Ellison, and with the consent of the prosecutor, and the defendants only aided and abetted Ellison, they would not be guilty; but if the plan or plot was only to detect the crime, and not bring it about, the prisoners would be guilty, if, in fact, they feloniously broke and entered, or with felonious intent, and without the owner’s consent, removed any part of the bacon. This, we think, is substantially in accordance with the opinion of the court in Dodge v. Brittain, Meigs, 84; Kemp v. The State, 11 Hum. [320] : “A man may direct a servant to appear to encourage the design of the thieves, and to lead them on till the offense is complete, so long as he did not induce the original intent, but only provided for its discovery after it was formed. ... If a man *608 is suspected of an intent to steal, and another, to try him, leaves his property in his way, which he takes, he is guilty of iarcenv. But it would not he the case if the master had directed the servant to deliver the property to the thief, instead of directing him to furnish facilities for his arriving at the place where it was kept. ’ ’ See Meigs, Rep., 86, 87.
The strongest view_in favor of_the defendants in this case, justified hy the testimony, is that Ellison, by the direction of the prosecutor, encouraged the prisoners to make the attempt on the particular night, by informing them that the prosecutor and his family would be away from home and then gave the prosecutor information that they weie coming, but the poof does not show that Ellison took any part either in breaking or entering the house, although the jury, for some reason, have acquitted the prisoners of the offense of breaking in the house.
Upon the second question, while the testimony is not entirely conclusive, by applying the rule as to positive and negative witnesses, the verdict may be sustained, as there is the testimony of one witness that he found a sack in the smoke-house, after the affair was over, with a piece of meat in it and another partly in it; and also the testimony of the prosecutor that other pieces qf bacon had been moved; while others of the witnesses did not see anything of the sort, although they searched carefully, and it is apparent that the prisoners were not allowed much time to complete the offense after they were discovered.
But the record presents another matter which we cannot overlook, although not referred to in argument. The oath administered to the officer in charge of the jury was fatally defective, as held by lhis court in qriite a number of recent-cases. He was sworn “to keep them separate and apart from other citizens uniil they agree, or are otherwise discharged by the court, with instruction to bring them into court to-morrow morning at the meeting thereof.” This *609 is not the oalli required, although the writer of this opinion has regarded the former ruling of this court on this question as very strict. Yet it is the rule applied in many other cases, and is now firmly adhered to by the majority, and these prisoners are entitled' to a new trial on this ground.
Reversed.